UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MEADOWFIELD APARTMENTS, LTD., a
Florida limited partnership,

        Plaintiff,

v.                                                  Case No.  5:05-cv-412-Oc-10GRJ

UNITED STATES OF AMERICA,

        Defendant.
_____

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Defendant-Intervenor's Motion To Intervene (Doc. 22) to which Plaintiff Meadowfield Apartments, Ltd., ("Meadowfield") has filed a memorandum in opposition. (Doc. 26.) For the following reasons, the Motion to Intervene (Doc. 17) is due to be **DENIED**.

## I. BACKGROUND & FACTS

This case concerns the prepayment of a Section 515 loan by owners of low income housing in Belleview, Florida. Plaintiff, Meadowfield has brought an action pursuant to 28 U.S.C. §2410 to quiet title to an affordable housing development known as the "Meadowfield Apartments." Meadowfield owns and operates the Meadowfield Apartments, a 30-unit apartment complex, which is regulated by the Rural Housing and Community Development Services ("Rural Housing"), an administrative division of the

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

United States Department of Agriculture, which has jurisdiction over rural development housing projects under the National Housing Act of 1949, 42 U.S.C. § 1451 *et seq.*

In January 1984, Meadowfield received two Section 515 loans[2] in the total sum of $992,000.00 to develop the Meadowfield Apartments. In order to receive the loans Meadowfield executed and delivered to FmHA, two promissory notes, secured by a real estate mortgage on the Meadowfield Apartments and a security agreement. (the "Loan Agreement".) The Loan Agreement imposed a number of restrictions on Meadowfield, including a covenant to use the property as low income housing for 20 years even if the loans were prepaid.[3] Notably, the Loan Agreement contains a provision which provides that Meadowfield was permitted to prepay the loans at any time.[4]

However, in 1987, after the Loan Agreement was executed, Congress enacted the Emergency Low Income Housing Preservation Act ("ELIHPA"), which restricted prepayment of § 515 Loans entered into before December 21, 1979.[5] Subsequently, in 1992, Congress passed the Housing and Community Development Act of 1992, which extended ELIHPA's restriction to loans made from December 21, 1979 through 1989.[6]

On September 16, 2005, Meadowfield unconditionally tendered full payment of

---

[2] As part of the Housing Act of 1949, 42 U.S.C. § 1485 Congress enacted the Rural Housing Program, which authorized the Farmers Home Administration ("FmHA")(which has now been subsumed into the Rural Housing Service ("RHS")), to make below-market rate loans, known as Section 515 loans, and provide other financial incentives to borrowers unable to obtain private financing to acquire or construct rural housing stock. <u>Parkridge Investors, Ltd. Partnership v. Farmers Home Admin</u>., 13 F.3d 1192, 1195-96 (8th Cir. 1994).

[3] Doc. 10, Stipulated Facts, p. 4.

[4] Doc. 1, ¶ 7.

[5] Doc. 10, p. 3.

[6] *Id.* p.4.

all amounts due under the two promissory notes and mortgage.[7] The United States Department of Agriculture declined to accept the tender citing ELIHPA.[8]

The instant motion to intervene was filed by six individuals, all of whom are low and very low income tenants of Meadowfield Apartments. According to the intervenors, each of them holds a property interest under a contractual lease agreement with Meadowfield. Additionally, the same intervenors are presently plaintiffs in another action pending before this Court in which the intervenors have filed an action for declaratory and injunctive relief against the Secretary of the Department of Agriculture and the Administrator of the Rural Housing Service, in their official capacities, requesting that the Court declare that the ELIHPA applies to Meadowfield's attempt to repay the Section 515 Loans and that the Court enter an injunction ordering the Department of Agriculture to comply with the requirements of ELIHPA in processing the prepayments by Meadowfield and require the Rural Housing Service to adopt regulations providing tenants a right to administratively appeal agency decisions with respect to repayment of Section 515 Loans.[9]

## II. DISCUSSION

The intervenors filed their motion to intervene in this action as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure.[10] To intervene as a

---

[7] *Id.* p. 5

[8] *Id.*

[9] *See,* Case No. 5:07-cv-33-Oc-10GRJ (M.D. Fla. Ocala Division), Doc. 1.

[10] Rule 24(a) provides, in pertinent part, that:
Upon timely application anyone shall be permitted to intervene in an action:
(1) when a statute of the United States confers an unconditional right to intervene; or
(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may...impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

matter of right under Rule 24(a)(2), the intervenor must establish the following requirements: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.[11]

The intervenors have failed to establish that they have a sufficient interest in the transaction at issue, or that if they are not permitted to intervene, this action will impede their ability to protect their interests. Moreover, the interests of the intervenors are adequately protected by the United States in this action. The Court will address each of these requirements in turn.

With regard to whether the intervenors have demonstrated an adequate interest in the property that is the subject of this action, the Eleventh Circuit requires that the "intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding. This interest has also been described as a direct, substantial, legally protectable interest in the proceedings."[12]

The leasehold interest of the intervenors in the Meadowfield Apartments is not a direct, substantial, legally protectable interest in the transaction in this case because this action involves the cancellation of the mortgage on the property and not the cancellation of the leasehold interests of the intervenors as tenants. While the

---

[11] Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989).

[12] Purcell v. BankAtlantic Financial Corporation, 85 F. 3d 1508, 1512 (11th Cir. 1996)(*quoting* Worlds v. Department of Health and Rehabilitative Serv., 929 F. 2d 591, 594 (11th Cir. 1991)).

intervenors do have certain rights under federal law as tenants in Section 515 housing,[13] a judgment in this action in favor of Meadowfield would not defeat those rights nor would it terminate their interest or rights provided under the current terms of their leases with Meadowfield. As such, the suggestion by the intervenors that they "will be forced to pay either increased rents or may be forced to move from the complex" is speculative at best. The leases between the intervenors and Meadowfield will be unchanged by a judgment in this action. And whether Meadowfield will attempt to remove this property from the 515 housing program after the leases expire, if it is successful in this action, is highly uncertain.

Lastly, intervenor's reliance upon *United States v. Dixwell Housing Corp.*[14] for the proposition that the tenants of subsidized housing have a sufficient interest to intervene as a matter of right, is distinguishable. *Dixwell* involved an action by the Department of Housing and Urban Development to foreclose on a mortgage on a subsidized housing project. There the aim of the action was to divest the owner of its ownership interest in the property, which could have resulted in the lose of the ability of the tenants to participate in the subsidy program. In contrast, the purpose of this action is to cancel the mortgage - through prepayment - and not to cancel or modify the rights of the intervenors under their respective leases. Accordingly, the Court concludes that the intervenors have failed to establish a legally protectable interest in this action.

---

[13] For example, the tenants rents are controlled and are based upon their income, *see,* 7 C.F.R. § 3650.202, 3650.203, and the tenants may be entitled to a grievance process regarding the operation of the complex. *See,* 7 C.F.R. 3650.160.

[14] 71 F.R.D. 558 (D. Conn. 1976)

As discussed above, a judgment in this action should not impede or impair the ability of the intervenors to protect their rights or interest under their respective leases, which is one of the requirements an intervenor must establish in order to intervene as a matter of right. The intervenors suggest that if the loans are prepaid, Meadowfield will no longer be required to base the rental payments on the income of the tenants, which may result in the displacement of the intervenors from their housing. This argument ignores the fact that the intervenors have existing leases with Meadowfield, which define the rights and obligations of the parties. The full payment and satisfaction of the mortgage by the mortgagor cannot as a matter of law cancel or modify the rights of the tenants under their leases or alter the amount of rent specified in the leases. While the owner may be able to negotiate different leases in the future to new tenants or on renewal of leases, a judgment in this case will not, and does not, impede the rights the tenants presently possess or the rights of the tenants in the future to ensure that the Rural Housing Authority takes all necessary action to insure that there is available low income housing.

To be sure, the best evidence that the rights of the intervenors to protect their interests is not impeded or impaired by this action, is the fact that the intervenors have filed suit in this Court against the Department of Agriculture and the Rural Housing Authority to protect their interests. Accordingly, for these reasons, the Court concludes that the intervenors have failed to establish that disposition of this case would impede or impair their ability to protect their interests as low income tenants.

Lastly, the request to intervene in this action is due to be denied because the intervenors have failed to establish that there rights are not adequately represented by the United States. "[W]hen applicants for intervention seek to achieve the same

6

objectives as an existing party in the case," as here, there is a presumption that the proposed interest of the intervenor is represented adequately by the existing party.[15] The intervenors seek precisely the same objectives sought by the United States in this action - that is, a declaration that ELIHPA is applicable to the prepayment of the loan by Meadowfield.

The best evidence that the objectives of the intervenors and of the United States are identical is illustrated in the arguments advanced by the United States in this case in support of the motion for summary judgment filed by the United States.[16] In its motion for summary judgment the United States argues, *inter alia*, that Meadowfield cannot bypass the procedures of ELIHPA for making prepayment because Meadowfield has failed to pursue the required administrative remedies and safeguards which are aimed at protecting tenants and their communities from the loss of low-income housing. Thus, according to the United States, compliance with the requirements of ELIHPA - which mandate that the Rural Housing Authority give notice of prepayment offers to tenants, like the intervenors - is aimed at determining how optimally to prevent or mitigate dislocation of tenants and the loss of affordable housing units. This is the central theme of the argument advanced by the intervenors - that they ultimately will be displaced from their homes. Accordingly, because it is plainly evident that the objectives of the United States in this case are identical to those of the intervenors - and as evidenced by the arguments advanced by the United States in the pending motion for summary judgment

---

[15] United States v. City of Miami, 278 F.3d 1174, 1178 (11th Cir. 2002) (quoting Meek v. Metro. Dade County, Fla., 985 F.2d 1471, 1477 (11th Cir. 1993)).

[16] Doc. 18.

- the intervenors have failed to rebut the presumption that their interests are adequately represented by the United States.

The intervenors also suggest that the interest of the United States in this case is to avoid financial liability, which interest may diverge from their interest in maintaining their low income leases. This argument misses the point of this action. This case is a quiet title action the result of which, if successful, would permit Meadowfield to pay off the existing mortgage. There is no request for damages in this case or any request for any type of relief that would impose financial liability on the United States. To the contrary, as expressed by the United States, it seeks to enforce the provisions of ELIHPA to insure the continued availability of affordable housing. And to the extent that intervenors suggest that the United States will not vigorously advance the interest of the intervenors this suggestion is belied by the fact that the United States has filed a motion for summary judgment in this case seeking to enforce the provisions of the ELIHPA and protect the rights of low income tenants.

### III.  RECOMMENDATION

Accordingly, for the foregoing reasons, the Court concludes that the intervenors have failed to establish the requirements to intervene as a matter of right in this action and, therefore, it is respectfully **RECOMMENDED** that Defendant-Intervenor's Motion To Intervene (Doc. 22) be **DENIED**.

**IN CHAMBERS** in Ocala, Florida, on April 6, 2007.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:

    The Honorable Wm. Terrell Hodges
    Senior United States District Judge

    Counsel of Record